UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

---

| | |
|---|---|
| SHIVA STEIN,<br>Franklin Lakes, NJ 07417, | :<br>:<br>: |
| Plaintiff, | : Civil Action No. _____<br>:<br>: |
| v. | : **COMPLAINT FOR VIOLATIONS OF**<br>: **SECTIONS 14(a) AND 20(a) OF THE** |
| TCF FINANCIAL CORPORATION,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : **SECURITIES EXCHANGE ACT OF**<br>: **1934**<br>: |
| GARY TORGOW,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : **JURY TRIAL DEMANDED**<br>:<br>: |
| THOMAS C. SHAFER,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| VANCE K. OPPERMAN,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| DAVID T. PROVOST,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| PETER BELL,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| KAREN L. GRANDSTRAND,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| RICHARD H. KING,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| RONALD A. KLEIN,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| BARBARA J. MAHONE,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| BARBARA L. MCQUADE,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | :<br>:<br>: |
| ROGER J. SIT,<br>333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : |

| | |
|---|---|
| JULIE H. SULLIVAN, <br> 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : <br> : <br> : |
| JEFFREY L. TATE, <br> 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : <br> : <br> : |
| ARTHUR A. WEISS, <br> 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : <br> : <br> : |
| FRANKLIN C. WHEATLAKE, <br> 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : <br> : <br> : |
| THERESA M.H. WISE, <br> 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226 | : <br> : <br> : |
| -AND- | : <br> : |
| HUNTINGTON BANCSHARES INCORPORATED, <br> 41 South High Street, Columbus, Ohio 43287 <br> Serve at:  2405 York Road, Suite 201 <br> Lutherville-Timonium, MD 21093 | |
|       Defendants. | |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against TCF Financial Corporation ("TCF or the "Company"), and the members TCF's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between TCF and Huntington Bancshares, Inc. ("Huntington").

2

2.      Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") to be filed on January 28, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby TCF will merge with and into Huntington, with Huntington continuing as the surviving corporation (the "Proposed Transaction"). Pursuant to the terms of the Agreement and Plan of Merger, the companies entered into (the "Merger Agreement") each outstanding TCF common share of beneficial interest will be converted into the right to receive 3.0028 shares of Huntington common stock (the "Merger Consideration").

3.      As discussed below, Defendants have asked TCF's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Registration Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisor of the Company, Keefe, Bruyette & Woods, Inc. ("KBW") in conducting the valuation analyses in support of its fairness opinion. The Registration Statement also omits or misrepresents information regarding the financial analyses conducted by KBW.

4.      It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TCF's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant Huntington is incorporated in Maryland, or is an individual or entity who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because defendant Huntington in incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of TCF common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Gary Torgow has served as a member of the Board since 2019 and is the Executive Chairman.

11. Individual Defendant Thomas C. Shafer has served as a member of the Board since 2020 and is the Vice Chairman of the Board.

4

12. Individual Defendant Vance K. Opperman has served as a member of the Board since 2019.

13. Individual Defendant David T. Provost has served as a member of the Board since 2016 and is the Chief Executive Officer of the Company.

14. Individual Defendant Peter Bell has served as a member of the Board since 2019.

15. Individual Defendant Karen L. Grandstrand has served as a member of the Board since 2019.

16. Individual Defendant Richard H. King has served as a member of the Board since 2019.

17. Individual Defendant Ronald A. Klein has served as a member of the Board since 2019.

18. Individual Defendant Barbara J. Mahone has served as a member of the Board since 2019.

19. Individual Defendant Barbara L. McQuade has served as a member of the Board since 2019.

20. Individual Defendant Roger J. Sit has served as a member of the Board since 2019.

21. Individual Defendant Julie H. Sullivan has served as a member of the Board since 2019.

22. Individual Defendant Jeffrey L. Tate has served as a member of the Board since 2019.

23. Individual Defendant Arthur A. Weiss has served as a member of the Board since 2019.

24. Individual Defendant Franklin C. Wheatlake has served as a member of the Board since 2019.

25. Individual Defendant Theresa M.H. Wise has served as a member of the Board since 2019.

26. Defendant TCF is incorporated in Michigan and maintains its principal offices at 333 W. Fort Street, Suite 1800, Detroit, Michigan 48226. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "TCF."

27. Defendant Huntington is incorporated in Maryland and maintain its principal offices at 41 South High Street, Columbus, Ohio 43287. The Company's common stock trades on the NASDAQ Stock Exchange under the symbol "HBAN."

28. The defendants identified in paragraphs 10-25 are collectively referred to as the "Individual Defendants" or the "Board."

29. The defendants identified in paragraphs 10-27 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

30. TCF operates as the financial holding company for TCF National Bank that provides various financial products and services in the United States and Canada. It operates through Consumer Banking, Wholesale Banking, and Enterprise Services segments. The Company offers checking, savings, and money market accounts; certificates of deposit; and individual retirement accounts. It also provides consumer loans; loans secured by personal property, as well as unsecured personal loans; commercial and industrial loans; commercial real estate loans; lease and equipment financing products; inventory financing products; and residential, consumer, and small business lending products. In addition, the Company offers investment management and

custodial, trust, and financial and estate planning services; retirement planning and employee benefit programs; and cash management, international trade finance, foreign exchange management, and loan syndication services, as well as sells investment products, such as annuity products and mutual funds. Further, it provides treasury services comprising investment and borrowing portfolios, as well as manages capital, debt, and market risks; check cashing and remittance services; lines of credit, letters of credit, and capital market products; and credit and debit cards. As of December 31, 2019, the Company had 520 branches, including 396 traditional branches, 121 supermarket branches, and three campus branches located in Michigan, Illinois, Minnesota, Colorado, Ohio, Wisconsin, Arizona, and South Dakota; and 1,099 ATMs. TCF was founded in 1923 and is headquartered in Detroit, Michigan.

31.     On December 13, 2020, the Company and Huntington jointly announced the Proposed Transaction:

> COLUMBUS, Ohio and DETROIT, Dec. 13, 2020 /PRNewswire/ -- Huntington Bancshares Incorporated ("Huntington") (Nasdaq: HBAN; www.huntington.com), the parent company of The Huntington National Bank, and TCF Financial Corporation ("TCF") (Nasdaq: TCF; www.tcfbank.com), the parent company of TCF National Bank, today announced the signing of a definitive agreement under which the companies will combine in an all-stock merger with a total market value of approximately $22 billion to create a top 10 U.S. regional bank with dual headquarters in Detroit, Michigan and Columbus, Ohio.
>
> The combined company will bring together two purpose-driven organizations with a deep commitment to the customers and communities they serve. With a rich history of caring for customers and colleagues, the new organization will have a top 5 rank in approximately 70% of its deposit markets[1] and will leverage its scale to serve customer needs through a distinctive, "People-First, Digitally-Powered" customer experience.
> Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, TCF will merge into Huntington, and the combined holding company and bank will operate under the Huntington name and brand following the closing

of the transaction. Upon closing, Stephen D. Steinour will remain the chairman, president, and CEO of the holding company and CEO and president of the bank. Gary Torgow will serve as chairman of the bank's board of directors.

"This merger combines the best of both companies and provides the scale and resources to drive increased long-term shareholder value. Huntington is focused on accelerating digital investments to further enhance our award-winning people-first, digitally powered customer experience," Steinour said. "We look forward to welcoming the TCF Team Members. Together we will have a stronger company better able to support our customers and drive economic growth in the communities we serve."

The headquarters for the Commercial Bank will be in Detroit where at least 800 employees of the combined company, nearly three times the number TCF had planned, will be housed in the downtown structure. Columbus will remain the headquarters for the holding company and the Consumer Bank.

"This partnership will provide us the opportunity for deeper investments in our communities, more jobs in Detroit, an increased commitment in Minneapolis and a better experience for our customers," Torgow said. "We will be a top regional bank, with the scale to compete and the passion to serve. Merging with the Huntington platform will be a great benefit to all of our stakeholders and will drive significant opportunities for our team members."

The pro forma combined company will have approximately $168 billion in assets, $117 billion in loans, and $134 billion in deposits. The combined organization will significantly improve Huntington's market position, increase scale and provide greater revenue growth opportunities. The company is expected to extend its top quartile financial metrics after completion of the integration.

Huntington expects the financially compelling transaction to be 18% accretive to earnings per share in 2022, assuming the fully phased-in transaction cost synergies. The merger uniquely positions the combined organization to capitalize on market opportunities and broaden the channels and customers it serves through expanded distribution and product offerings.

**Strategic and Financial Benefits of the Proposed Merger**
- **Enhanced Profitability and Scale:** The combined company's expanded distribution and scale positions Huntington to serve an expanded customer base through a distinctive customer experience while driving top-quartile financial performance.

- **Significant Cost Synergies:** Estimated cost savings of the combined company are approximately $490 million, or 37% of TCF's noninterest expense.
- **Revenue Growth through Combined Segments and Expanded National Footprint Businesses:** The combined company will strengthen its Consumer, Wealth, Business Banking, and Commercial businesses. Huntington will leverage its broader product and services offering, as well as its award-winning digital capabilities, across the expanded combined customer base. In addition, TCF operates national inventory and equipment finance businesses, which will complement Huntington's existing commercial efforts.
- **Strengthened Market Position**: The combined company will maintain its leading market position with the largest branch share and second position in Consumer Deposits in the footprint. The combination expands the Huntington footprint to include Minnesota, Colorado, Wisconsin, and South Dakota, and deepens its presence in Chicago.
- **Strong Brand and Cultural Alignment:** The combined company expands the reach of Huntington's "Welcome" culture and enriches an inclusive, diverse, high-performing team.
- **Community Commitment:** Huntington will contribute $50 million to a donor advised fund at the Community Foundation for Southeast Michigan to serve the needs of communities in Detroit and across the footprint of the combined bank. This donor advised fund will be in addition to commitments already made by both banks, including a combined $10 million to Detroit's Strategic Neighborhood Fund. The combined company also will remain committed to Minneapolis, where TCF was founded nearly a century ago. Huntington and TCF have consistently earned "Outstanding" ratings under the Community Reinvestment Act. Huntington recently announced a $20 billion Community Plan, which is focused on driving economic inclusion through access to capital, affordable housing and home ownership, and community lending and investment. $5 billion is specifically dedicated to Michigan. The most recent component of the Community Plan is "Huntington's Lift Local Business" which provides much-needed capital to local minority, woman and veteran-owned businesses, as well as giving customers access to business planning and educational programs to support local businesses. TCF also recently announced a $1 billion commitment over five years to support minority-owned and women-owned small businesses, which will be added to Huntington's commitment. Huntington is the #1 SBA Lender in the nation for loan origination, and this merger will provide expanded opportunity to bring that expertise to a larger, combined footprint.

- **Board of Directors**
  At closing, five current TCF Directors will be added to the Board of Directors of the holding company. David L. Porteous will serve as Lead Director of the holding company's Board of Directors and the bank's Board of Directors.

  **Timing and Approvals**
  The merger is expected to close in the second quarter of 2021, subject to satisfaction of customary closing conditions, including receipt of customary regulatory approvals and approval by the shareholders of each company.

  **Advisors**
  Goldman Sachs & Co. LLC is serving as financial advisor to Huntington. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to Huntington.
  Keefe, Bruyette & Woods, *a Stifel Company*, is serving as financial advisor to TCF. Simpson Thacher & Bartlett LLP is serving as legal advisor to TCF.

\* \* \*

32. The Board has unanimously agreed to Proposed Transaction. It is therefore imperative that TCF's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

33. On January 28, 2021, TCF and Huntington jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is

necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

34. With respect to the financial projections disclosed in the Registration Statement, the Registration Statement fails to provide material information.

35. For the *TCF Prospective Financial Projections*, the Registration Statement fails to provide: (i) the estimated excess cash flows that TCF could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company; and (ii) TCF's basis for providing KBW the estimated long-term annual growth rates of 5% for TCF's net income and for TCF's risk weighted assets, an estimated pre-tax cost of cash of 1.05% and an estimated marginal tax rate of 18.0%.

36. For the *Huntington Prospective Financial Projections*, the Registration Statement fails to provide: (i) the estimated excess cash flows that Huntington could generate over the period from June 30, 2021 through December 31, 2026 as a standalone company, and (ii) Huntington's basis for providing KBW the estimated long-term annual growth rates of 3% for TCF's net income and for TCF's risk weighted assets, an estimated pre-tax cost of cash of 1.05% and an estimated marginal tax rate of 18.0%.

37. With respect to KBW's *TCF Selected Companies Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by KBW in its analysis.

38. With respect to KBW's *Huntington Selected Companies Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the companies observed by KBW in its analysis.

39. With respect to KBW's *Selected Transactions Analysis*, the Registration Statement fails to disclose the multiples and financial metrics for the transactions observed by KBW in its analysis.

40. With respect to KBW's *Huntington Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) present value of the estimated excess cash flows that Huntington could generate over the period from June 30, 2021 through December 31, 2026; (ii) the terminal values; (iii) basis for assuming that Huntington would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level; (iv) the basis for selecting the discount rate range from 9.0% to 12.0%; and (v) the basis for applying a range of 9.5x to 12.5x to Huntington's estimated 2026 earnings.

41. With respect to KBW's *TCF Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) present value of the estimated excess cash flows that TCF could generate over the period from June 30, 2021 through December 31, 2026; (ii) the terminal values; (iii) basis for assuming that TCF would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level; (iv) the basis for selecting the discount rate range from 10.0% to 13.0%; and (v) the basis for applying a range of 9.0x to 13.0x to TCF's estimated 2026 earnings.

42. With respect to KBW's *Pro Forma Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) present value of the estimated excess cash flows that the pro forma company could generate over the period from June 30, 2021 through December 31, 2026; (ii) the terminal values; (iii) basis for assuming that the pro forma would maintain a common equity tier 1 ratio of 9.00% and would retain sufficient earnings to maintain that level; (iv) the

basis for selecting the discount rate range from 9.0% to 12.0%; and (v) the basis for applying a range of 9.5x to 12.5x to Huntington's estimated 2026 earnings.

43. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

46. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and Huntington and relied upon by


the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

47. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

48. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's and Huntington's financial projections.

49. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of TCF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of TCF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TCF, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TCF, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

54. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

57. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: February 2, 2021

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

**GOLDMAN & MINTON, P.C.**

By:  */s/ Thomas J. Minton*
Thomas J. Minton (Bar No. 03370)
3600 Clipper Mill Road, Suite 201
Baltimore, MD 21211
Telephone: (410) 783-7575
Email: tminton@charmcitylegal.com

*Attorneys for Plaintiff*

17